925 A.2d 32 (2007)
393 N.J. Super. 578
Melvin ROSEN and James D. Fox on Behalf of Themselves and All Others Similarly Situated, Plaintiffs-Respondents/Cross-Appellants,
v.
SMITH BARNEY, INC., Salomon Smith Barney, Inc., Salomon Brothers, Inc., Defendants-Appellants/Cross-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued November 8, 2006.
Decided June 15, 2007.
*34 Robert J. Del Tufo, New York City, argued the cause for appellants/cross-respondents (Skadden, Arps, Slate, Meagher & Flom, attorneys; Mr. Del Tufo, of counsel and on the brief).
Bruce H. Nagel, Roseland, argued the cause for respondents/cross-appellants (Nagel, Rice & Mazie, attorneys; Mr. Nagel, on the brief).
Before Judges WEISSBARD, GRAVES and LIHOTZ.
The opinion of the court was delivered by
LIHOTZ, J.T.C. (temporarily assigned).
We are asked to review whether the parties' agreement to divert earnings to an incentive compensation plan violates the public policy undergirding the New Jersey Wage and Hour Law (Wage law), N.J.S.A. 34:11-4.1 to -67. Defendants Smith Barney, Inc., Salomon Smith Barney, Inc., and Salomon Brothers, Inc. (collectively Smith Barney) are the former employers of plaintiffs Melvin Rosen and James D. Fox. Plaintiffs represent the class of former financial consultant employees of Smith Barney, who participated in a "Capital Accumulation Plan" (CAP), and "who lost the right to receive certain shares of stock under the terms of the CAP" when the CAP's forfeiture provisions were invoked.
Smith Barney appeals from partial summary judgment entered on May 18, 2005. The Law Division judge concluded that the CAP's forfeiture provisions violated the State's public policy to protect employees' compensation, as expressed by the Wage law. Plaintiffs cross-appeal from partial summary judgment dismissing their tort claims. We affirm the dismissal of the tort claims and reverse the partial summary judgment declaring the CAP null and void.
Beginning in 1989, Smith Barney offered to its financial consultant employees (i.e., financial planners and stock brokers) the option of participating in the CAP, a deferred compensation stock purchase plan. The CAP's purpose, as set forth in its enrollment form, was threefold: (1) "to attract, retain and motivate officers and certain other employees;" (2) "to compensate them for their contributions to the growth and profits of the [c]ompany;" and (3) "to encourage ownership of the [c]ommon [s]tock on the part of such personnel." It was undisputed that a high degree of broker turnover existed, industry-wide.
Plaintiffs, while employed by Smith Barney as stock brokers, agreed to participate in the CAP and voluntarily elected to allow Smith Barney to use a portion of their compensation to purchase restricted shares of stock in its parent company, Citigroup, Inc., which was offered through the plan at a twenty-five percent discount under market price (Plan stock). The enrollment period was for either six months or one year; enrollment could be discontinued after any specified interval of participation.
Upon enrollment, withheld monies were held for six months, during which time, plaintiffs surrendered control over the funds. At oral argument before us, and, as evidenced in prior motions before the trial court, it was asserted that during this six-month period funds would be returned and participation cancelled upon request. When the six-month deferral period ended, the funds were used to purchase Plan stock. Stock certificates reflecting each purchase "may, but need not, be" issued; in most cases, a record of each award of Plan stock was kept as a computerized or manual bookkeeping entry. Applicable federal, state or local income taxes on the compensation invested in the CAP were deferred.
*35 Plan stock ownership fully vested upon completion of a two-year period. During the vesting period, CAP participants were entitled to receive all stock dividends from their identified Plan stock, and to exercise all shareholder voting rights attached to those shares. Upon vesting, all restrictions on transfer of the Plan stock were eliminated. If a participant died, the stock restrictions lapsed and the CAP assets were returned. If the participant became disabled prior to the termination of employment, the Plan stock vested as originally scheduled. However, if a participant was terminated from employment with Smith Barney for cause or resigned prior to the expiration of the two-year vesting period, all unvested stock interests in the CAP were forfeited. The forfeiture provisions were consistent with the Internal Revenue Code provisions permitting tax deferral. See 26 U.S.C.A. § 83.
Rosen joined Smith Barney on May 15, 1987, and enrolled in the CAP on June 9, 1993, electing to invest twenty percent of his compensation for a six-month term. When the six-month term expired, Rosen renewed his investment for a one-year term. For each investment period, Rosen signed an enrollment form, which stated, in relevant part:
I elect to participate in the Capital Accumulation Plan (CAP) subject to all of the provisions and administrative rules of the Plan. Immediately upon completion of the business combination between Shearson and Smith Barney, I direct my employer . . . to pay me the percent indicated below in the form of restricted stock out of my total compensation, excluding income arising from forgivable loans and the vesting of restricted stock. I understand if I leave Smith Barney Shearson voluntarily or [if I] am terminated for Cause before the restrictions lapse on shares of restricted stock received under the Plan, I will forfeit the stock, as well as the money I am hereby authorizing to be paid in the form of such restricted stock. I further understand and agree that, in the sole discretion of the Committee, the shares to be awarded to me may be issued under another similar plan, on the same terms and conditions as described in the CAP enrollment package sent to me.
The second form executed by Rosen on December 21, 1993, used negligibly different language in the beginning of the paragraph and the effect of the agreement was identical.
Rosen voluntarily resigned from his employment with Smith Barney on July 1, 1994, to join Merrill Lynch, a competing brokerage house. At that time, Smith Barney invoked the CAP's forfeiture clause and retained Rosen's unvested Plan stock.
Fox joined Smith Barney on July 5, 1995, and elected to allocate five percent of his annual cash compensation to the CAP on December 19, 1996. The enrollment form signed by Fox, which was similar to the form signed by Rosen, stated, in relevant part:
By signing and returning the Capital Accumulation Plan Election Form, I have elected to participate in CAP subject to all of its provisions and administrative rules. I understand that I have irrevocably directed my employer, Smith Barney Inc., to pay me the percentage I have elected in the form of restricted stock out of all cash compensation paid to me during the periods specified on the election form. If I leave the Company voluntarily or am terminated for Cause before the restrictions lapse on shares of restricted stock awarded under CAP, I understand that I will forfeit the restricted stock as well as the compensation I have authorized to be paid in *36 the form of such restricted stock. I further understand that the percentages I have hereby elected will continue in full force and effect for the successive corresponding six-month periods year after year, unless or until I elect, in writing, to modify the percentages or discontinue my participation during a subsequent annual enrollment period.

Fox voluntarily resigned from his employment with Smith Barney on February 16, 1999, to join Raymond James, a competing brokerage house. At that time, Smith Barney invoked the CAP's forfeiture clause and retained Fox's unvested Plan stock.
Both Rosen and Fox testified, during depositions, that they voluntarily elected to participate in the CAP, understood its terms, including the vesting and forfeiture provisions, and believed it was an attractive investment and tax savings vehicle. During the period of their participation, each received all vested Plan stock at a considerably discounted price.
Plaintiffs' complaint, filed on October 1, 1999, alleged the CAP violated the Wage law because its terms required the forfeiture of earned wages. Plaintiffs also asserted common law tort claims of breach of contract, conversion, breach of fiduciary duty, and unjust enrichment. Numerous motions in connection with discovery and collateral matters, not relevant to the pending appeal, transpired from 1999 to 2003. On January 24, 2003, Smith Barney filed a motion for summary judgment seeking to dismiss plaintiffs' tort claims. Plaintiffs cross-moved for partial summary judgment asserting that the CAP's forfeiture provisions were incompatible with the Wage law and New Jersey public policy.
The trial court issued a bench decision on April 23, 2004, granting Smith Barney's motion for partial summary judgment and dismissed all plaintiffs' common law claims. The determination was set forth in an order dated May 4, 2004. For substantially the same reasons articulated by the trial court in its April 23, 2004 bench opinion, we affirm the grant of partial summary judgment to Smith Barney, dismissing plaintiffs' common law breach of contract, conversion, unjust enrichment, and breach of fiduciary duty claims. R. 2:11-3(e)(1)(A) and (E).
The trial court also addressed plaintiffs' request for partial summary judgment based on the argument that the CAP's forfeiture provisions were incompatible with the Wage law. The trial court framed the issue as: "whether an employer may lawfully retain an employee's deferred compensation investment in a capital acquisition plan pursuant to the plan's forfeiture provision without being violative of the New Jersey wage law statute or public policy." The trial court determined that forfeiture of earned wages invested in the CAP "contradicts public policy, which requires that employees receive their earned compensation," granted plaintiffs' motion for partial summary judgment, and dismissed Smith Barney's counterclaim.
Smith Barney's motion for reconsideration and other relief was denied by order dated July 19, 2004. The trial court's order also fixed damages for each class member in the amount of "the value of the forfeited shares on the day of departure, less a 25% discount, plus pre-judgment interest from the day of departure."
Subsequent proceedings addressed "collateral subjects, including the status of stock options under the CAP, calculation of prejudgment interest, [and payment of] attorneys fees." The Law Division judge entered an order and final judgment on May 18, 2005.
In this opinion, we review the question of whether the CAP contravenes the Wage *37 law or the State's public policy, issues of first impression for this court.
The Wage law, enacted in 1965, states, in pertinent part:
No employer may withhold or divert any portion of an employee's wages unless:
a. The employer is required or empowered to do so by New Jersey or United States law; or
b. The amounts withheld or diverted are for:
. . . .
(2) Contributions authorized . . . in writing by employees . . . for payment into company-operated . . . security option or security purchase plans to buy securities of the employing corporation . . . at market price or less, provided such securities are listed on a stock exchange or are marketable over the counter.
[N.J.S.A. 34:11-4.4.]
Although the Wage law does not include a legislative statement of intent, its enactment leads to the conclusion that the statute was designed to protect employees' wages and to guarantee receipt of the fruits of their labor. Generally, unless expressly provided by the Wage law, employers may not withhold or divert any portion of an employee's wages. Ibid.
Plaintiffs argued before the trial court that the plain meaning of N.J.S.A. 34:11-4.4b(2), which permits deductions of an employee's earned income to be deposited into "security purchase plans to buy securities of the employing corporation, [or] an affiliate corporation . . . listed on a stock exchange," requires "immediate ownership" and "immediate marketability" of the stock purchased by the wages deducted. Under the terms of the CAP, earnings are deducted and held for six months without payment of interest to the employee. Plaintiffs' assert this grants only a "conditional right to receive the shares two years later," in violation of the immediate ownership and immediate marketability requirements, thus, making the diversion of wages into the CAP an impermissible deduction under the statute.
In rendering its opinion, the trial court rejected plaintiffs' statutory interpretation argument, stating:
As to the statutory language itself, contrary to plaintiff[s'] position and regarding the lack of marketability of the [CAP] shares, I am satisfied that . . . the intent of N.J.S.A. [34:11-4.4] and the particular subsection [b(2)], is to prevent use of closely held shares of stock or stock in which there is not readily obtainable market or value.
The shares in question were clearly publicly traded, [and] readily disposable once vested. While the deferred receipt of the shares alone affects immediate marketability  without some vesting period, it could prevent any tax benefit to the plaintiffs . . . or deferment on the tax. . . . And I do not find that, because of the deferral period alone, that that is violative of the statutory scheme.
We agree with the trial court's analysis on this point. Without question, the CAP terms were fully disclosed and plaintiffs' participation was pursuant to a written agreement. Monies identified for CAP participation were invested in "securities . . . listed on a stock exchange," as Citicorp stock was a readily marketable stock. Plaintiffs' interest in the CAP is defined and discernable, although subject to restriction. Each CAP participant immediately controlled receipt of all stock dividends and exercised voting rights of the identified Plan stock. Deferral of income taxes on monies invested in CAP was immediately claimed, further evidencing a form of beneficial ownership of CAP monies. The contention that a participant's "immediate ownership" was defeated because *38 unrestricted ownership was delayed by the vesting period resulting in a deduction not authorized by N.J.S.A. 34:11-4.4b(2), is not supported by a reading of the statutory language, which contains no such "immediacy" restriction. It is not our function to "presume that the Legislature intended something other than that expressed by way of the [statute's] plain language." DiProspero v. Penn, 183 N.J. 477, 492, 874 A.2d 1039 (2005) (quoting O'Connell v. State, 171 N.J. 484, 488, 795 A.2d 857 (2002)). We conclude that the CAP meets the basic provisions of N.J.S.A. 34:11-4.4b(2), as it is in writing and is a security purchase plan that buys marketable securities identified in an account for each CAP participant.[1]
Although we agree with the trial court that plaintiffs' contention on this statutory interpretation issue misses the mark, plaintiffs' true challenge presented to the Law Division was aimed at the CAP's forfeiture provision invoked when a participant falls short of the vesting period. Plaintiffs asserted that employers must pay employees all earned income when due, and therefore, the CAP's forfeiture clause violates New Jersey's public policy making the CAP "null and void." See N.J.S.A. 34:11-4.7; see also Male v. Acme Markets, Inc., 110 N.J.Super. 9, 12-13, 264 A.2d 245 (App.Div.1970) (holding defendant-employer's practice of withholding earned wages for cashier-employees' register shortages violated N.J.S.A. 34:11-4.4 and public policy).
Generally, "equity abhors a forfeiture," Dunkin' Donuts of Am., Inc. v. Middletown Donut Corp., 100 N.J. 166, 182, 495 A.2d 66 (1985), and forfeiture provisions contained in deferred compensation plans have been liberally construed in favor of employees. See Uricoli v. Police and Firemen's Ret. Sys., 91 N.J. 62, 75-76, 449 A.2d 1267 (1982); Russell v. Princeton Labs. Inc., 50 N.J. 30, 35-36, 231 A.2d 800 (1967); Fiola v. N.J. Treas. Dept., 193 N.J.Super. 340, 347-48, 474 A.2d 23 (App.Div.1984); Ellis v. Lionikis, 152 N.J.Super. 321, 327, 377 A.2d 1208 (Ch.Div.1977), aff'd, 162 N.J.Super. 579, 394 A.2d 116 (App.Div.1978). The trial judge reasoned that to extend these determinations to an employee's earnings invested in CAP was a "logical and natural step," stating:
The real issue in this case boils down to whether an employer may lawfully retain an employee's deferred compensation investment in a capital acquisition plan pursuant to the plan's forfeiture provision without being violative of the New Jersey wage law statute or public policy.
. . . .
The court finds that forfeiture of earned wages invested in CAP contradicts public policy, which requires that employees receive their earned compensation.
It seems fundamentally unfair to allow a forfeiture to be used as a restrictive covenant under these circumstances, at least to the extent that the monies that were due and owing to the plaintiffs by way of salary.
. . . .
I find that the forfeiture provision is invalid on its face and is violative of the New Jersey statutory scheme [set forth in the Wage law].
*39 On appeal, Smith Barney challenges the position that the CAP is unenforceable as a matter of law, suggesting no wages were forfeited; instead, "a portion of a financial consultant's `earned wages' was invested in CAP at the employee's direction and therefore [the money] was no longer `earned wages' but an investment." Smith Barney proffers, in the alternative, that although forfeiture provisions may be disfavored, they are not disallowed. Therefore, the CAP's contractual relationship between an employer and employee, which gave plaintiffs, at their sole option, the right to decide to participate in the CAP after full written disclosure of all terms, should be upheld. See Dunkin' Donuts of Am., supra, 100 N.J. at 182-84, 495 A.2d 66; see also Gillman v. Bally Mfg. Corp., 286 N.J.Super. 523, 530-33, 670 A.2d 19 (App.Div.), cert. denied, 144 N.J. 174, 675 A.2d 1122 (1996).
Smith Barney correctly states that no New Jersey case flatly prohibits the use of forfeiture clauses. Forfeiture clauses have be upheld in arms-length business transactions between sophisticated business parties. See Dunkin' Donuts of Am., supra, 100 N.J. at 185-86, 495 A.2d 66 (franchisee's intentional underreporting of sales, which triggered termination of the franchise pursuant to the specific terms of the franchise contract, was upheld as enforceable); Gillman, supra, 286 N.J.Super. at 533, 670 A.2d 19 (forfeiture of corporation's top executive's non-exercised stock options upheld pursuant to retirement agreement requiring exercise within the one-year period after retirement date). Also, partial forfeiture of a former employee's deferred compensation entitlement has been allowed based upon the specific plan provisions of the deferred compensation contract, see Evo v. Jomac, Inc., 119 N.J.Super. 7, 19, 289 A.2d 551 (Law Div. 1972) (pension plan amendment providing for forfeiture of interest if former employee engages in competition with prior employer upheld for period after date of amendment)[2], or, in the case of public employment, based on the statute requiring honorable service, see Corvelli v. Bd. of Trs., 130 N.J. 539, 550-51, 617 A.2d 1189 (1992) (forfeiture of former police chief's public pension allowed as a result of malfeasance); Uricoli, supra, 91 N.J. at 78-79, 449 A.2d 1267 (total forfeiture of pension benefits inappropriate where misconduct occurred after twenty years of honorable service).
Cases finding forfeiture provisions unenforceable have turned on their specific facts. See Stopford v. Boonton Molding Co., 56 N.J. 169, 186-87, 265 A.2d 657 (1970) (amendment to contributory pension plan establishing the termination of benefits was not enforceable against retired employee who held a vested lifetime pension interest prior to passage of the amendment); Russell, supra, 50 N.J. at 36-37, 231 A.2d 800 (forfeiture of deferred compensation benefits not triggered because employee did not terminate employment voluntarily or for cause, as required by pension contract); Ellis, supra, 152 N.J.Super. at 327-28, 377 A.2d 1208 (forfeiture clause in profit sharing plan which prohibited employee from engaging in competition with employer within designated territory during a two-year period after separation of service held unenforceable *40 because covenant not to compete was found to be unreasonable because employee did not use his prior relationships with employer's customers in gaining business on behalf of his new employers).
It is important to note that the Supreme Court has concluded that a forfeiture remedy is drastic, but not impermissible. Despite the opportunity to do so, the Court has not pronounced forfeiture clauses of pension interests void or against public policy. See Steinmann v. N.J. Dep't of Treas., 116 N.J. 564, 576, 562 A.2d 791 (1989); Stopford, supra, 56 N.J. at 186-87, 265 A.2d 657; Russell, supra, 50 N.J. at 35, 231 A.2d 800. In Russell, the specific opportunity to answer this question in the context of a pension benefit lost upon voluntary termination of employment was presented, as the Court queried: "[W]hether the employee should suffer a forfeiture of something he has earned?" 50 N.J. at 35, 231 A.2d 800. However, the ultimate conclusion reached by the Court turned on an examination of the contract terms and a determination that plaintiff left his employment involuntarily, by mutual agreement making the contract forfeiture clause inapplicable. Id. at 35-37, 231 A.2d 800.
Similar individual or class challenges to the validity of the CAP's forfeiture clause have been raised in other state jurisdictions, and in multidistrict litigation in the Federal District court. It is helpful to review those determinations that have previously examined whether the forfeiture provisions in the CAP (or similar plan) violate the wage laws of their respective states, which generally guaranteed employees must receive all earned income or otherwise prohibits employers from making deductions from employees' wages. Each court has held the CAP deductions were permissible contracts that did not run afoul of the examined wage law statutory proscriptions.
In McCarthy v. Citigroup Global Mkts., Inc., 463 F.3d 87, 95 (1st Cir.2006), the Circuit Court vacated the District Court's remand of an arbitration panel's rejection of the plaintiffs' claims that the CAP violated the New Hampshire wage law which restricted deductions made from an employee's compensation. The Circuit Court, however, vacated the lower court's ruling on procedural grounds and affirmed the arbitration panel's dismissal of plaintiff's claims. Ibid.
In Kim v. Citigroup, Inc., 368 Ill.App.3d 298, 305 Ill.Dec. 834, 856 N.E.2d 639, 648-49 (2006), the Illinois Court of Appeals reversed the trial court's conclusion that the CAP provision allowing the forfeiture of a participant's earned wages violated the Illinois Wage Payment and Collection Act. Ibid. The appellate court found the funds used for CAP participation were "wages" and the plaintiff, who was a financial planner, voluntarily chose to enter the CAP with full knowledge of the forfeiture provision because it was a good investment vehicle. Ibid. The appellate court concluded "the deductions were valid under the Wage Act," and "the forfeiture provision in the CAP program [was] not against the public policy of [Illinois]." Ibid.
The Court of Appeals of Georgia reviewed the CAP in Milhollin v. Salomon Smith Barney, Inc., 272 Ga.App. 267, 612 S.E.2d 72 (2005). The plaintiff's argument that the forfeiture provision was unenforceable as a liquidated damages clause, which retro-actively deprived him of a portion of his previously earned salary, was rejected and the appellate court concluded the CAP provisions were enforceable because the election and forfeiture provisions were not ambiguous or legally defective. Id. at 76-77.
*41 The Court of Appeals, Second District, in California reviewed the trial court's grant of summary judgment for the defendant after determining that the CAP's forfeiture provisions did not violate section 201 and section 202 of the California Labor Code in Schachter v. Citigroup, Inc., 126 Cal.App.4th 726, 23 Cal.Rptr.3d 920 (2 Dist.2005). However, the appellate court's conclusion centered on the violation of procedure in the trial court action, not the substantive claims of the parties. Id. at 928-29.
The Court of Appeals of New York has considered another plan, Prudential Securities' MasterShares Plan, which contains provisions similar to those of the CAP in Marsh v. Prudential Sec. Inc., 1 N.Y.3d 146, 770 N.Y.S.2d 271, 802 N.E.2d 610 (2003). The appeals court permitted the contracts' enforcement and upheld the parties' ability to contract, finding the terms of MasterShares, including the forfeiture provisions, did not violate the New York wage or labor laws designed to ensure that employees receive the full amount of their earned compensation. The court reasoned that the plaintiffs voluntarily entered into the agreement, the terms of the investment plans were fully disclosed, the participants were knowledgeable, sophisticated, and could weigh the potential risks against the rewards, and immediate benefits were afforded to participants in the form of stock dividends, tax deferral and voting rights. See also Schunkewitz, supra, 99 Fed. Appx. at 356 (designated as not precedential).
Our analysis reveals that the common thread woven throughout the decisions by these courts reviewing specific issues posed by challenges to the CAP and the New Jersey decisions permitting or prohibiting forfeiture is that enforceability of a forfeiture provision is judged against the standard of reasonableness, with due regard for the consideration that the court's equitable jurisdiction to permit relief from a forfeiture clause must not ignore the parties' legal rights to bind themselves to specific contract terms. See Dunkin' Donuts of Am., supra, 100 N.J. at 182-86, 495 A.2d 66; Gillman, supra, 286 N.J.Super. at 530-33, 670 A.2d 19; Knollmeyer v. Rudco Indus., Inc., 154 N.J.Super. 309, 313-14, 381 A.2d 378 (App.Div.1977).
However, no other state statute that was analyzed exactly mirrors the provisions of our Wage law. Thus, we are left to examine whether policy considerations supporting the Wage law countervail the CAP. In Briarglen II Condo. Assn. v. Twp. of Freehold, 330 N.J.Super. 345, 355-56, 749 A.2d 881 (App.Div.), certif. denied, 165 N.J. 489, 758 A.2d 648 (2000), we set forth the paradigm governing a determination of that public policy overrides contractual provisions, as follows:
the dictates of public policy may require invalidation of private contractual arrangements where those arrangements directly contravene express legislative policy or are inconsistent with the public interest or detrimental to the common good. Our power to declare a contractual provision void as against public policy must be exercised with caution and only in cases that are free from doubt. We must employ a balancing test, weighing the legislative policy and the public interest against the enforcement of the contractual provision, to determine whether the contractual provision at issue is void.
[Ibid. (citations and internal quotation marks omitted).]
Because public policy itself strongly favors freedom to contract, we decline to adopt the trial court's reasoning that forfeiture of the nonvested interests in the CAP *42 wrongfully deprives plaintiffs of earned wages as a matter of public policy.
As we have stated, the CAP does not run afoul of N.J.S.A. 34:11-4.4b(2) because the contract is in writing and all terms are fully disclosed prior to any participant enrolling. Participation is optional and the risk of forfeiture is unambiguously disclosed. The CAP investment provides immediate beneficial tax treatment and some stock ownership benefits, such as dividends and voting. The period of delay for absolute ownership is neither onerous nor unreasonable. Plaintiffs freely, willingly, and knowledgably consented to the use of their compensation to be placed in this deferred investment vehicle.
Concluding CAP deductions are permissible under the statute, we cannot agree with the arguments that public policy requires the conclusion that the CAP investment contract is void because it contains a forfeiture clause. Such a view overlooks an assessment of the employer's purpose and reasonableness of the utilizing a forfeiture provision after consideration of the correlative rights and obligations set forth in the CAP contract in its entirety. Smith Barney's stated objectives in advancing the CAP include: the apparent intent to attract and retain employees and their continued loyal and faithful service in an industry fraught with disruptive departures of brokers; the attraction of broker-employees to Smith Barney by affording them a fruitful investment as they remain sustaining employees; and, the continuity of Smith Barney's investment-customer base.[3]
Although the forfeiture clause may be an inhibitive influence on an employee's decision whether to accept a new job, we do not consider it unreasonable or invalid per se. Plaintiffs' argument that the CAP should be against public policy because it allows Smith Barney to receive a significant financial windfall in the form of forfeited compensation is specious. Equitable relief is not available merely because enforcement of the contract causes a hardship to one of the parties. Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs., 182 N.J. 210, 223-24, 864 A.2d 387 (2005); Dunkin' Donuts of Am., supra, 100 N.J. at 183-84, 495 A.2d 66. Additionally, the argument ignores the total value of the incentive benefits paid out through the plan to plaintiffs and other participants.
In conclusion, we affirm the trial court's May 18, 2005 order entering judgment in favor of defendants and against plaintiffs on the alleged tort claims, and we reverse the final judgment entered in favor of the designated plaintiffs and against defendants based on the conclusion that the CAP violated the Wage Law. Based on our conclusion that the CAP violates neither the statute nor the State's public policy, the provisions of the judgment awarding damages to plaintiffs are also reversed.
Affirmed in part and reversed in part.
WEISSBARD, J.A.D., concurring in part, dissenting in part.
I would affirm the Law Division's ruling that the Smith Barney CAP violates New *43 Jersey public policy as expressed in the Wage Law, N.J.S.A. 34:11-4.4.
At the outset, the emphasis in many of the cases cited in defendant's brief, and in the majority opinion as well, on the voluntary nature of plaintiffs' participation and their ability as stockbrokers to engage in a sophisticated analysis of the CAP, with regard to its benefits and its potential pitfalls, is entirely misplaced. Thus, defendant "emphasize[s] the significance of choice," and, referring to plaintiff Fox, argues that "the choices were all his." However, our statute, unlike those in the other jurisdictions, specifically provides that any agreement between employer and employee made in violation of the Wage Law,
shall be deemed to be null and void, and the penalties in this act provided may be enforced notwithstanding such agreement; and each and every employee with whom any agreement in violation of this section shall be made by any such employer, or the agent or agents thereof, shall have a right of civil action against any such employer for the full amount of his wages in any court of competent jurisdiction in this State.
[N.J.S.A. 34:11-4.7]
Thus, whether the employee agreed with full knowledge[4] of the plan's delayed vesting and forfeiture provisions is irrelevant, as is the employee's level of sophistication. The CAP either violates the Wage Law or it does not. One cannot agree to violate public policy. Vasquez v. Glassboro Serv. Ass'n, Inc., 83 N.J. 86, 90, 415 A.2d 1156 (1980); GM Acceptance Corp. v. Cahill, 375 N.J.Super. 553, 556, 868 A.2d 1078 (App.Div.), certif. denied, 183 N.J. 591, 874 A.2d 1109 (2005).
Defendant suggests that the forfeiture provision of the CAP does not constitute a diversion of wages because the forfeiture does not relate to wages but to an "investment" in company stock, albeit funded by a wage diversion. In my view, the CAP cannot be fragmented in that manner. Rather, the wage diversion for the purpose of purchasing stock is inextricably bound to the forfeiture component of the plan. The CAP must be viewed as a unified whole, which provides that earned wages never paid but invested in the employer's stock are forfeited if the employee leaves employment within two years.
Boiled down to its essence, the CAP forfeiture provision amounts to a restrictive covenant of the broadest type imaginable. Equating the CAP with a restrictive covenant is neither "illogical [or] frivolous," as defendant argues. The employees were not merely prevented from leaving to work for a competitor but were prevented from leaving at all. They could not work for anyone, in the securities industry or elsewhere, if they wished to keep their earned wages that had been converted into stock. Clearly, if such a provision had been in the form of a restrictive covenant, it would never pass the reasonableness test of Solari Indus. v. Malady, 55 N.J. 571, 585, 264 A.2d 53 (1970) and Whitmyer Bros., Inc. v. Doyle, 58 N.J. 25, 32-33, 274 A.2d 577 (1971). See Maw v. Advanced Clinical Commc'n, Inc., 179 N.J. 439, 446-48, 846 A.2d 604 (2004), and id. at 452-57, 846 A.2d 604 (Zazzali, J., dissenting). The unreasonableness of the restriction directly impacts upon whether the *44 CAP violates the public policy of the Wage Law that employee earnings are sacrosanct and must be paid to the employee except in certain carefully delineated situations. While I do not necessarily agree with defendant, and the majority, that the exception upon which it relies does not require that the stock be immediately marketable, I assume for purposes of this decision that the CAP facially complies with N.J.S.A. 34:11-4.4b(2). Nevertheless, the forfeiture provision renders that facial compliance a nullity.
As far back as Russell v. Princeton Lab., Inc., 50 N.J. 30, 35, 231 A.2d 800 (1967), the Court espoused the principle that a pension plan should be "liberally construed in favor of the employee" in order to prevent the "forfeiture of something [the employee] has earned"; such a forfeiture being disfavored. In Ellis v. Lionikis, 162 N.J.Super. 579, 394 A.2d 116 (App.Div.1978), we affirmed a judgment "denying enforcement of a post-employment restrictive condition against competitive employment providing for a forfeiture of benefits in a profit-sharing trust for a violation thereof." Id. at 581, 394 A.2d 116. "The condition provided for forfeiture of an employee's interest in the trust if he should, during the first two years of separation from employment with [the employer], engage directly or indirectly in competition with the business of [the employer] within a designated territory." Id. at 581-82, 394 A.2d 116. We agreed with the Chancery Division judge, Ellis v. Lionikis, 152 N.J.Super. 321, 327-29, 377 A.2d 1208 (Ch.Div.1977), that the validity of a noncompetition clause "whether contained in employment contracts or in conditions against post-employment competition as part of an employee benefit plan, is to be determined by the same standard, i.e., reasonableness," Ellis, supra, 162 N.J.Super. at 584, 394 A.2d 116, as determined by the Solari/Whitmyer formulation. As the Chancery Division judge said, "[i]t would seem anomalous to say that a restrictive covenant which would not be enforceable by employer can be utilized by him to work a forfeiture of substantial economic benefits which were earned as an incident to the employment." Ellis, supra, 152 N.J.Super. at 329, 377 A.2d 1208. I find that principle applicable here, as did the Law Division judge.
While it has been held that forfeiture provisions should be upheld in the absence of fraud, accident, mistake, duress or undue influence or against a claim that the forfeiture produces hardship, Dunkin' Donuts of Am., Inc. v. Middletown Donut Corp., 100 N.J. 166, 183-84, 495 A.2d 66 (1985); Gillman v. Bally Mfg. Corp., 286 N.J.Super. 523, 528, 670 A.2d 19 (App. Div.), certif. denied, 144 N.J. 174, 675 A.2d 1122 (1996), that general principle is, in my view, trumped by the Wage Law, which is remedial legislation to be liberally construed. New Jersey Dep't of Labor v. Pepsi-Cola Co., 170 N.J. 59, 62, 784 A.2d 64 (2001). It is true, as defendant argues, that the Wage Law does not prohibit forfeitures, but neither does it countenance them. We do not engage in prohibited judicial law-making when we confront a circumstance not directly addressed by the Legislature. We do no more than seek to divine the Legislature's intent if it had the issue in its sights. New Jersey Democratic Party v. Samson, 175 N.J. 178, 193-194, 814 A.2d 1028 (2002).
As noted, I find nothing persuasive in the decisions from other jurisdictions relied on by defendant. The statutes in question are different and do not reflect our public policy. Defendant's reliance on Evo v. Jomac, Inc., 119 N.J.Super. 7, 289 *45 A.2d 551 (Law Div.1972), is entirely misplaced. That case relied on Pennsylvania law. Id. at 13, 289 A.2d 551. More importantly, in Ellis, supra, 162 N.J.Super. at 584, 394 A.2d 116, we declined to adopt the reasoning of Evo. Defendant profits handsomely from the CAP, to the tune of some $365 million in forfeitures from 1996 to 2000. Even if the CAP forfeiture provision has the benign purpose of serving as an incentive for the employee to remain with Smith Barney, the end result is that substantial amounts of earned income, the fruits of the labor of employees such as plaintiffs, never reaches their pockets. Thus, the CAP violates the public policy embodied in the Wage Law. On the basis of the conclusion, I dissent.
I would, however, affirm the dismissal of plaintiff's common law claims for breach of contract, conversion and breach of fiduciary duty for the reasons expressed by the Law Division judge. I do not agree, however, that dismissal of plaintiffs' illegal penalty cause of action was appropriate on summary judgment. The forfeiture acted as a penalty for early departure levied upon those who participated in the plan, without regard to any actual damages, i.e., lost clients, etc. resulting from the termination of employment. A jury could find the forfeiture to be a penalty under the circumstances presented.
NOTES
[1] In two unreported New Jersey District Court decisions, a similar conclusion had been reached. See Schunkewitz v. Prudential Sec., Inc., No. 02-00356 (D.N.J.) (slip op. at 12), aff'd, 99 Fed. Appx. 353 (3d Cir.2004); Marsh v. Prudential Securities, Inc., No. 01-4940 (D.N.J. May 2, 2002) (slip op. at 83).
[2] Although the Law Division concluded the conflict of laws principles required that substantive rights of the parties arising under the contract terms of the plan were measured by Pennsylvania law, the court determined that the correlative rights and obligations of the employee and employer under both the pension and profit-sharing plans was governed by ordinary contract principles equally applied in New Jersey, see Russell, supra, 50 N.J. at 35, 231 A.2d 800, in the same manner as under Pennsylvania law.
[3] The trial court in Ellis found as significant the fact that the plaintiff's new employment competed with his former employer in a minor way and that the employer's sales in the territory covered by the plaintiff actually increased after the plaintiff's termination. 152 N.J.Super. at 328, 377 A.2d 1208. This finding was affirmed on appeal. 162 N.J.Super. 579, 394 A.2d 116. Protection of an employer's customer relationships is a legitimate interest, Whitmyer Bros., Inc. v. Doyle, 58 N.J. 25, 33, 274 A.2d 577 (1971), particularly as evidence suggests that Smith Barney provided sales leads to the brokers.
[4] There is support in the record for a conclusion that participation in the CAP may not be truly voluntary, in that refusal to participate resulted in adverse consequences to the employee. Enrollment in the CAP was vigorously pursued by management to the extent that statistics were kept on the percentage of CAP participation in various regions of the country. In plaintiffs' region, enrollment was over 92%.