950 A.2d 205

MELVIN ROSEN AND JAMES D. FOX, ON BEHALF OF THEM-
SELVES AND ALL OTHERS SIMILARLY SITUATED, PLAIN-
TIFFS–APPELLANTS, AND RICHARD SIRACUSA, PLAINTIFF,
v. SMITH BARNEY, INC., SALOMON SMITH BARNEY, INC.
AND SALOMON BROTHERS, INC., DEFENDANTS–RESPON-
DENTS, AND JOHN DOES 1–1000, INCLUSIVE, DEFENDANTS.

Argued March 26, 2008—Decided June 25, 2008.

*Bruce H. Nagel* argued the cause for appellants (*Nagel Rice*, attorneys).

*Robert J. Del Tufo* argued the cause for respondents (*Skadden, Arps, Slate, Meagher & Flom*, attorneys).

PER CURIAM.

We affirm substantially for the reasons expressed in the thorough and persuasive Appellate Division majority opinion authored by Judge Lihotz. *See Rosen v. Smith Barney, Inc.*, 393 *N.J.Super.* 578, 925 *A.*2d 32 (App.Div.2007). We add only the following comments by way of further explanation for our decision to affirm, in which we focus only on the issues raised in the dissent. *See R.* 2:2–1(a)(2).

This dispute concerns a challenge by plaintiffs, Melvin Rosen, James D. Fox, and others similarly situated, to an incentive compensation plan, called the Capital Accumulation Plan (CAP). The CAP was offered to them during the time when they were employed by defendants, Smith Barney, Inc., Salomon Smith Barney, Inc. and Salomon Brothers, Inc., and plaintiffs concede that they were voluntary participants in the CAP. Their complaint, however, challenged the CAP as being in violation of our Wage and Hour Law, *N.J.S.A.* 34:11–4.1 to –67.

Our review of that governing statute demonstrates that incentive compensation plans in general, and the CAP in particular, find their authorization within the terms and provisions of the Wage and Hour Law itself. *See N.J.S.A.* 34:11–4.4(b)(2). That statutory pronouncement, although generally prohibiting an employer from "withhold[ing] or divert[ing] any portion of an employee's wages," *N.J.S.A.* 34:11–4.4, expressly provides for exceptions when

the amounts withheld or diverted are devoted to specifically authorized purposes. *N.J.S.A.* 34:11–4.4(b). More specifically, subsection (2) of that section of the statute permits wages to be withheld or diverted for the purpose of:

Contributions authorized either in writing by employees, or under a collective bargaining agreement, for payment into company-operated thrift plans; or security option or security purchase plans to buy securities of the employing corporation, an affiliated corporation, or other corporations at market price or less, provided such securities are listed on a stock exchange or are marketable over the counter. [*N.J.S.A.* 34:11–4.4(b)(2).]

■ The CAP, the plan in which these plaintiffs participated, was entirely voluntary and its terms were fully disclosed to each of them. The funds, derived from plaintiffs' compensation at their direction, were invested in "securities of the employing company ... listed on a stock exchange," as the statute contemplates. *Ibid.* Plaintiffs' interest in the CAP was defined, and both the indicia of and control over that interest, through plaintiffs' receipt of dividends and their ability to exercise voting rights, were immediate. Neither the fact that there was a vesting period attached to full and complete ownership of the interest, nor the fact that the CAP included a forfeiture provision, violates any of the provisions of the Wage and Hour statute.

In addition, there were two significant benefits of the CAP that made it attractive to plaintiffs, namely, the ability to purchase securities at a deep discount and the tax benefits accorded to it as a deferred compensation plan. The very features of the CAP about which plaintiffs now complain were part and parcel of the latter. That is because, in order to qualify as a deferred income plan, the CAP was required to comply with federal tax law. The Internal Revenue Code permits deferral of income taxes on earned wages, like those that were the source of the funds utilized by these plaintiffs for purposes of their participation in the CAP, only if the plan meets the Code's specific criteria. *See* 26 *U.S.C.A.* §§ 83, 409A. In particular, although there are a variety of ways to structure a plan so that it qualifies for these tax benefits, the one identified in section 83 of the Code, that would apply to the

CAP, includes a requirement that there be a substantial risk of forfeiture. 26 *U.S.C.A.* § 83(a). That is to say, this section of the Code permits individual taxpayers, like these plaintiffs, who receive property, like their interest in the CAP assets, in exchange for services, to exclude it from their gross income as long as it remains "subject to a substantial risk of forfeiture" or until "the first time the rights of the person having the beneficial interest in such property are transferable." *Ibid.*

This section of the Internal Revenue Code specifically defines "subject to a substantial risk of forfeiture" as including "if such person's rights to full enjoyment of such property are conditioned upon the future performance of substantial services by any individual." 26 *U.S.C.A.* § 83(c)(1). Alternatively, a different, potentially applicable section of the Internal Revenue Code, 26 *U.S.C.A.* § 409A, governing nonqualified deferred compensation plans, permits taxpayers to qualify for favorable tax treatment if the compensation is retained by the employer for a period of time and remains at a "substantial risk of forfeiture" until payable to the employee. 26 *U.S.C.A.* § 409A(a)(1)(A)(i).

In order for the employees to participate in the CAP, they were required to agree to put that compensation at a "substantial risk of forfeiture." In doing so, however, the employees agreed to a term that the CAP included as a mechanism for achieving the benefits of favorable treatment under the Internal Revenue Code. Nor do we find any evidence that our Legislature regards these terms of our federal tax statutes as raising any public policy concern. Instead, we read the relevant provisions in the Internal Revenue Code, 26 *U.S.C.A.* §§ 83, 409A(a)(1), that create the qualifying grounds for plans like the CAP, as being in harmony with our Wage and Hour Law, *see N.J.S.A.* 34:11–4.4(b)(2) (permitting participation in deferred compensation plans).

■ Moreover, we reject the assertion that the CAP's inclusion of, and defendants' potential invocation of, a forfeiture provision, operates as a penalty that therefore violates public policy in some fashion. Our traditional analysis of unenforceable penalty provi-

sions arises in the context of liquidated damage clauses that are only operative in breach of contract claims. *See, e.g., MetLife Capital Fin. Corp. v. Washington Ave. Assocs. L.P.,* 159 *N.J.* 484, 498–99, 732 *A.*2d 493 (1999) (explaining liquidated damages and holding that contractual term that purports to fix an "unreasonably large" sum as liquidated damages will not be enforced); *Wasserman's Inc. v. Twp. of Middletown,* 137 *N.J.* 238, 247–48, 645 *A.*2d 100 (1994) ("A penalty is the sum a party agrees to pay in the event of a breach, but which is fixed, not as a pre-estimate of probable actual damages, but as a punishment, the threat of which is designed to prevent the breach."); *accord Restatement (Second) of Contracts* § 356 (1981). As we have recognized, in that context, a contractual term fixing an unreasonably large liquidated damage amount is a penalty, which is unenforceable on grounds of public policy. *MetLife, supra,* 159 *N.J.* at 498–99, 732 *A.*2d 493; *Wasserman's Inc., supra,* 137 *N.J.* at 247–48, 645 *A.*2d 100.

We see, however, no manner in which the CAP forfeiture provision could be so construed. Plaintiffs were not signatories to any separate contractual agreement that would have prevented them from ending their employment with defendants; as a result, any decision they might make to leave their employment would not have been a contractual breach as to which a liquidated damages clause would arise or be imposed. That being the case, the operation of the forfeiture clause, because it is unrelated to an underlying breach of contract, cannot be understood to be such a penalty.

In summary, we discern nothing to support the conclusion that the forfeiture provisions, which were an integral part of defendants' CAP deferred incentive compensation program and in which plaintiffs voluntarily participated, violate the Wage and Hour Law or the public policy that it represents and embodies.

The judgment of the Appellate Division is affirmed.

*For affirmance*—Justices LaVECCHIA and WALLACE, RIVERA–SOTO, HOENS and STERN (t/a)—5.