**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0413-22

RONALD SANDS,

     Appellant,

v.

BOARD OF REVIEW,
DEPARTMENT OF LABOR
AND WORKFORCE
DEVELOPMENT, and RG
REALTY INVESTORS, LLC,

     Respondents.

_____

Argued March 18, 2024 – Decided April 5, 2024

Before Judges Marczyk and Vinci.

On appeal from the Board of Review, Department of Labor and Workforce Development, Docket No. 216821.

Sarah Shaver Hymowitz argued the cause for appellant (Legal Services of New Jersey, attorneys; Sarah Shaver Hymowitz, on the briefs).

Ian Michael Fiedler, Deputy Attorney General, argued the cause for respondent Board of Review (Matthew J.

Platkin, Attorney General, attorney; Janet Greenberg Cohen, Assistant Attorney General, of counsel; Ian Michael Fiedler, on the brief).

PER CURIAM

Petitioner Ronald Sands appeals from the August 26, 2022 final agency decision of the Board of Review, Department of Labor ("Board"), disqualifying him for unemployment benefits. Because the Board did not consider petitioner's argument that he had good cause to leave his position based on his employer's alleged violation of the New Jersey Wage Payment Law ("WPL"), N.J.S.A. 34:11-4.1 to -4.14, we reverse in part and remand to the Board for further fact-finding and a decision on that claim. We also affirm in part as discussed herein.

Petitioner was employed by RG Realty Investors, LLC ("RG") as a maintenance technician at a large residential housing complex managed by RG from February 11, 2019, until January 14, 2020. On January 15, 2020, he called out sick and never returned. On February 9, 2020, petitioner applied for unemployment benefits contending he was forced to leave his position because RG failed to comply with its promise to provide a golf cart for him to use to traverse the housing complex. As a result, petitioner was required to use his personal vehicle for work without reimbursement.

After the Division of Unemployment and Disability Insurance ("Division") found petitioner eligible for unemployment benefits, RG appealed. On July 28, 2020, the appeal tribunal of the Division conducted a telephonic hearing at which only a representative of RG, Andrew Weissman, testified because the appeals examiner was unable to contact petitioner. On July 29, 2020, the appeal tribunal reversed the Division's initial decision and determined petitioner was disqualified for benefits. Petitioner appealed to the Board, which remanded the case to the appeal tribunal, finding he established good cause for his failure to participate in the July 28, 2020 hearing.

On January 12, 2021, the appeals examiner conducted a second telephonic hearing at which petitioner and Weissman testified. Petitioner testified he "was told when [he] got hired . . . [he] would only use [his] car temporarily for transportation around the complex. [He] ended up using [his] vehicle for a whole year with[out] reimbursement." He used his car to take materials and tools from "the shop to the job site." Petitioner testified it was not possible to walk around the complex carrying tools and equipment because the property is so large. According to petitioner, he would not have been able to complete his work in a timely manner if he did not use his car.

3

Petitioner testified he asked about the status of the golf cart "every three months" and "was told they[ were] looking into it." He told his manager paying for the gas and wear and tear on his car, including new tires and brakes, was "costing [him] too much money," and he could not "afford to be working [there]." Petitioner contended he was paying an additional sixty dollars per week for gas to drive around the property. When asked by the appeals examiner if he was ever told when he would get the golf cart, petitioner responded, "[n]o, all I got told was it was temporarily. That[ i]s what I was told. I would use my car temporarily." Petitioner "assumed . . . temporary was a couple of months . . . ."

Weissman testified RG does have golf carts and tries "to accommodate [all the technicians] with [a golf cart], but it is not a guaranteed part of the agreement." He testified RG has several employees, some of whom use their personal vehicle onsite without reimbursement. Weissman contended petitioner never complained about expenses relating to use of his personal vehicle at work. Rather, he complained about the cost of traveling to and from work and Weissman attempted, unsuccessfully, to find petitioner a position closer to his home.

A-0413-22

According to Weissman, if a golf cart is not available, the maintenance technicians "either . . . walk or . . . use their own vehicle." Weissman explained a "[m]aintenance [t]echnician is not traveling around on the property constantly all day. They[ are] given . . . a couple of tickets and they[ will] be in one or two or three apartments throughout the day." Weissman testified the technicians are assigned "to work on a number of buildings that are next to each other. So, . . . they can just walk from one to the other and do[ not] have to travel around the property." Weissman contended if petitioner "asked for some kind of push[c]art because he did[ not] want to use his vehicle and wanted to use a pushcart to carry his tools around the property, that was something [RG] could have easily accommodated" and does at other properties.

Weissman disputed petitioner's claim regarding the size of the property, but conceded it is a large property. According to Weissman, it "[t]akes about [ten] minutes to walk from one side of the property to the other side." Weissman testified RG "do[es] request and . . . hire employees that have a vehicle. If they do[ not] have a vehicle . . . it would[ not] make sense for them really to work on this property."

On January 22, 2021, the appeal tribunal again reversed the Division's initial decision and determined petitioner was disqualified for benefits because

he voluntarily left his position without good cause attributable to the work. The appeal tribunal found RG "provided golf carts onsite for the employees to utilize around the residential complex to complete their assigned tasks. In the event that the golf carts became inoperable, the employees were required to utilize their personal vehicles." The appeal tribunal also found petitioner "left the job voluntarily because [RG] did not reimburse him for gasoline and the wear and tear on his personal vehicle" and "[a]t the time of hire, [petitioner] was aware that he would have to utilize his personal vehicle to perform tasks around the employer's complex, [to] which he agreed."

On February 5, 2021, petitioner appealed to the Board. On May 20, 2021, the Board affirmed the decision of the appeal tribunal. On January 26, 2022, petitioner, who was then represented by counsel, requested the Board reconsider its decision arguing, in part, he had good cause to leave his position because RG violated the WPL.

On August 26, 2022, the Board reopened the matter and, after review of the record below, again affirmed the appeal tribunal's decision that petitioner was disqualified for benefits. The Board determined his "contention that he refused an offer of unsuitable work is rejected as he continued to work under the same conditions for almost one year." It also found he "was made aware, at the

6

time of hire, that he would have to use his own vehicle for work until the employer was able to get him a golf cart. He was never given any specific [timeframe] of when this would occur." The Board did not address petitioner's argument that RG violated the WPL. This appeal followed.

On appeal, petitioner argues he had good cause to leave his position because RG violated the WPL by requiring he use his personal vehicle to do his job and failing to reimburse him for associated out-of-pocket expenses. He also argues he had good cause to leave his position because RG breached its promise to provide him with a golf cart within "a couple of months," and the Board's determination that RG did not make such a commitment was arbitrary, capricious, and unreasonable.

The Board argues petitioner left work voluntarily without good cause. More particularly, the Board contends RG did not violate the WPL because petitioner was not required to use his personal vehicle. According to the Board, petitioner chose to use his vehicle rather than walk around the complex using a pushcart. The Board also argues petitioner was never promised a golf cart within any specific timeframe and was merely dissatisfied with his lack of a golf cart.

Our review of decisions by administrative agencies is limited, with petitioners carrying a substantial burden of persuasion. In re Stallworth, 208

A-0413-22

N.J. 182, 194 (2011); Brady v. Bd. of Rev., 152 N.J. 197, 218 (1997). An agency's determination must be sustained "unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record." Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011) (quoting In re Herrmann, 192 N.J. 19, 27-28 (2007)).

"[I]f substantial evidence supports the agency's decision, 'a court may not substitute its own judgment for the agency's even though the court might have reached a different result.'" In re Carter, 191 N.J. 474, 483 (2006) (quoting Greenwood v. State Police Training Ctr., 127 N.J. 500, 513 (1992)). "However, the exercise of such deference is premised on our confidence that there has been a careful consideration of the facts in issue and appropriate findings addressing the critical issues in dispute." Bailey v. Bd, of Rev., 339 N.J. Super. 29, 33 (App. Div. 2001).

The burden of proof rests with the employee to establish a right to collect unemployment benefits. Brady, 152 N.J. at 218. Under N.J.S.A. 43:21-5(a), a person is ineligible for unemployment benefits if they leave work voluntarily, without good cause attributable to the work. N.J.A.C. 12:17-9.1(b) defines "good cause attributable to such work" as "a reason related directly to the individual's employment, which was so compelling as to give the individual no

choice but to leave the employment." "The decision to leave employment must be compelled by real, substantial and reasonable circumstances not imaginary, trifling and whimsical ones." Domenico v. Bd. of Review, 192 N.J. Super. 284, 288 (App. Div. 1983). "Mere dissatisfaction with working conditions which are not shown to be abnormal or do not affect health, does not constitute good cause for leaving work voluntarily." Ibid. (quoting Medwick v. Bd. of Rev., 69 N.J. Super. 338, 345 (App. Div. 1961)). A petitioner who leaves work for a personal reason, no matter how compelling, is subject to disqualification. Self v. Bd. of Rev., 91 N.J. 453, 460 (1982).

The WPL "was designed to protect employees' wages and to guarantee receipt of the fruits of their labor. Generally, unless expressly provided by the [WPL], employers may not withhold or divert any portion of an employee's wages." Rosen v. Smith Barney, Inc., 393 N.J. Super. 578, 585 (App. Div. 2007), aff'd, 195 N.J. 423 (2008). "No employer may withhold or divert any portion of an employee's wages unless . . . required or empowered to do so by New Jersey or United States law" or such deduction falls within one of the eleven exemptions found in the WPL. Ibid. (quoting N.J.S.A. 34:11-4.4).

The appeal tribunal and the Board did not consider petitioner's claim that he had good cause to leave his position because RG violated the WPL. Neither

the parties nor the court located any binding authority construing the provisions of the WPL in this context. We turn, therefore, to the applicable rules of statutory interpretation.

"The overriding goal of all statutory interpretation 'is to determine as best we can the intent of the Legislature, and to give effect to that intent.'" State v. S.B., 230 N.J. 62, 67 (2017) (quoting State v. Robinson, 217 N.J. 594, 604 (2014)). "To determine the Legislature's intent, we look to the statute's language and give those terms their plain and ordinary meaning because 'the best indicator of that intent is the plain language chosen by the Legislature.'" State v. J.V., 242 N.J. 432, 442–43 (2020) (citation omitted) (first citing DiProspero v. Penn, 183 N.J. 477, 492 (2005); and then quoting Johnson v. Roselle EZ Quick, LLC, 226 N.J. 370, 386 (2016)).

The plain language of the WPL prohibits an employer from diverting any portion of an employee's wages except in certain situations that do not apply here. In this case, petitioner set forth a viable claim that RG diverted a portion of his wages in violation of the WPL by requiring he use his personal vehicle and not reimbursing him for costs associated with that use. If petitioner was, in fact, required to use his personal vehicle without reimbursement, RG effectively

10

transferred its own operating expenses to petitioner and diverted his wages to pay those costs.

The appeal tribunal and the Board limited their inquiry to whether petitioner was promised a golf cart within any specific timeframe. As a result, the record neither demonstrates a careful consideration of the relevant facts, nor does it include appropriate findings addressing the critical issues in dispute. On remand, these facts and critical issues include, without limitation: (1) whether petitioner was required to use his personal vehicle or, as the Board contends, he could have performed his job on foot and opted to use his vehicle as a convenience; (2) if he was required to use his personal vehicle, the amount of the out-of-pocket expenses, if any, he actually incurred for gas and wear and tear; (3) whether the expenses incurred were sufficient to establish good cause to leave the position; and (4) whether RG violated the WPL and, if so, whether the violation separately established good cause to leave the position.

We are not persuaded by petitioner's claim that the Board incorrectly determined he was never promised a golf cart within "a couple of months." When asked if RG made such a promise, petitioner responded, "[n]o, all I [was] told was it was temporarily. That's what I was told. I would use my car temporarily." The Board's determination that petitioner was not promised a golf

cart within any specific timeframe was supported by credible evidence in the record and was not arbitrary, capricious, or unreasonable.

Reversed in part and remanded for further proceedings consistent with this opinion. Affirmed in part as to petitioner's claim that he had good cause to leave his position because RG breached its agreement to provide a golf cart within a specific timeframe. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION