**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2898-16T4

CELSO MORALES and CARLOS
HERNANDEZ,

     Plaintiffs-Appellants,

v.

V.M. TRUCKING, LLC, and GABRIEL
MELTSER c/o V.M. TRUCKING, LLC,

     Defendants-Respondents,

and

TRUCKING SUPPORT SERVICES,
LLC, and ROBERT LEFEBVRE c/o
TRUCKING SUPPORT SERVICES,
LLC, and CONTRACTOR RESOURCE
SOLUTIONS, LLC,

     Defendants.

_____

     Argued October 17, 2018 – Decided July 9, 2019

     Before Judges Fuentes, Accurso and Vernoia.

     On appeal from the Superior Court of New Jersey, Law
     Division, Essex County, Docket No. L-5411-15.

Matthew Dennis Miller argued the cause for appellants (Swartz Swidler, LLC, attorneys; Matthew Dennis Miller, on the briefs).

Frederick Conrad Biehl, III, argued the cause for respondents (Soriano Henkel Biehl & Matthews, attorneys; Frederick Conrad Biehl, III, on the brief).

PER CURIAM

Celso Morales and Carlos Hernandez (plaintiffs) appeal from February 3, 2017 orders denying their motion for summary judgment and granting summary judgment to defendants V.M. Trucking, LLC (VMT), and Gabriel Meltser, dismissing plaintiffs' putative class action, which alleged violations of the New Jersey Wage Payment Law (WPL), N.J.S.A. 34:11-4.1 to -4.14. Having reviewed the record in light of the applicable law, we affirm in part, reverse in part, vacate in part and remand for further proceedings.

I.

The issues in this matter arise out of plaintiffs' association with VMT as truck drivers providing transportation services to VMT's customers and turns on whether plaintiffs were employees subject to the requirements and protections of the WPL or independent contractors to whom the parties agree the WPL does not apply. In July 2015, plaintiffs, on behalf of themselves and others similarly situated, filed a complaint alleging defendants and their co-defendants, Trucking

Support Services, LLC (TSS), Contractor Resource Solutions, LLC (CRS), and Robert Lefebvre, violated the WPL by misclassifying plaintiffs as independent contractors during their respective associations with VMT and deducting "money from [their] paychecks each pay period ostensibly for payment for . . . truck leases and associated fees." Plaintiffs also asserted a cause of action alleging defendants and their co-defendants were unjustly enriched by their retention of monies wrongfully deducted in violation of the WPL. Defendants filed an answer, which included a counterclaim against the co-defendants for contribution and indemnification.

Defendants subsequently moved for summary judgment, arguing the WPL was inapplicable to plaintiffs as a matter of law because plaintiffs were associated with VMT as independent contractors and not employees. Two weeks later, plaintiffs moved for summary judgment and for class certification, asserting the undisputed facts established they were VMT's employees under the WPL and defendants violated the WPL by deducting various sums from their compensation and the compensation of others similarly situated.[1]

---

[1] TSS also moved for summary judgment. The court entered a February 3, 2017 order granting the motion. Plaintiffs do not appeal from that order and we therefore do not address it.

When a motion court is presented with cross-motions for summary judgment, it is required to consider each motion independently because a party does not relinquish the right to dispute the facts upon which an opposing party's motion is based merely by filing a cross-motion. O'Keeffe v. Snyder, 83 N.J. 478, 487 (1980). Here, the cross-motions were centered solely on whether the undisputed facts established as a matter of law that plaintiffs were employees under the WPL and, if so, whether defendants improperly made deductions from plaintiffs' wages in violation of the WPL. Thus, although the parties submitted separate statements of material fact supporting their respective motions in accordance with Rule 4:46-2(a) and opposition and counter statements of fact in accordance with Rule 4:46-2(b), the parties' submissions as to each motion were essentially identical. We have carefully considered all of the submissions and distill the following undisputed material facts based on our de novo review of the record.[2]

---

[2] Although we conduct a de novo review of a court's grant or denial of a summary judgment motion, "our function as an appellate court is to review the decision of the trial court, not to decide the motion tabula rasa." Estate of Doerfler v. Fed. Ins. Co., 454 N.J. Super. 298, 301-02 (App. Div. 2018). Here, our review of the record is encumbered by the court's failure to sort through the parties' submissions and make findings as to the undisputed facts upon which its decision was based. We remind the motion court that it is not the role of this court, even on a de novo review of a summary judgment motion, to find the

A.

VMT operates a trucking company in Newark and utilizes two types of truck drivers to provide transportation services to its customers. VMT utilizes employees it hires and designates as "company drivers" and putative independent contractors it designates as "contract drivers." Regardless of their designation, VMT drivers must have at least two years of driving experience and a Transportation Worker Identification Credential card, which allows access to ports for deliveries and pickups for VMT's customers. VMT also utilizes the same interview process to hire employees and independent contractors, and requires each to complete a drug and alcohol test and pass a driving test.

In 2007, Hernandez began his association with VMT when he was offered a position as either an employee or an independent contractor. Hernandez opted

---

undisputed facts in the first instance. Ibid. However, rather than remand the matter for the court to make the findings required by Rule 1:7-4, we have considered the record presented on the motions and determined de novo the undisputed facts. We limit our findings of the undisputed facts to those presented in the statements of material fact and opposition submitted to the court in accordance with Rule 4:46-2(a) and (b), and do not consider or rely on purported facts that were not presented in accordance with the Rule's requirements. Thus, we do not consider the parties' repeated reliance on statements of purported fact made during deposition testimony where the statements of fact were not presented to the motion court in accordance with Rule 4:46-2.

to be designated as an independent contractor and began providing truck driving services for VMT. Two years later, Morales began his association as a truck driver for VMT, also opting to be designated as an independent contractor. Hernandez and Morales continued their associations with VMT until 2014.[3]

VMT utilized CRS to administer independent contractor services and payroll for the individuals designated as independent contractors. VMT required individuals hired as independent contractors to complete forms contained in an Independent Contractor Enrollment Packet supplied by CRS. VMT did not impose this requirement on drivers designated as employees.

When their associations with VMT began, Hernandez and Morales completed and signed the Independent Contractor Enrollment Packet, which included the following documents: a fleet operator and service agreement with CRS; an owner-operator request for occupational accident insurance, with CRS as each plaintiff's sponsor; a vehicle sublease with Lease Rite, LLC; and a

---

[3] At Morales's request, he changed his status from independent contractor to employee from July 15, 2013, through August 11, 2013. During this period, the truck Morales leased as an independent contractor was assigned to someone else, and he drove a different VMT truck. Following August 11, 2013, Morales changed his status, again at his request, to independent contractor and resumed use of the truck he previously leased in that capacity. We do not address the legal significance of this period of Morales's association with VMT because it is not at issue on appeal.

A-2898-16T4

membership enrollment form for the United Truckers & Independent Contractors Association (UTICA). In pertinent part, the request for insurance, sublease, and membership enrollment form authorized the deduction of these costs directly from plaintiffs' compensation.

Stated differently, the owner-operator request for occupational accident insurance authorizes CRS to deduct from plaintiffs' compensation payments for "occupational accident insurance." The document provides that plaintiffs requested the coverage because they are "not . . . employee[s] or eligible for workers' compensation," but also states that plaintiffs "request coverage to be bound under the above referenced If Any Workers' Compensation policy."

The vehicle sublease authorizes VMT's payroll processor, TSS, to deduct directly from plaintiffs' weekly compensation a sum equal to the lease payment for the truck owned by VMT. Furthermore, although the sublease provides plaintiffs the option to purchase the leased trucks during the first twenty-four months following the commencement of their leases, the payments made by plaintiffs during this option period are not credited against the purchase price of the truck. Finally, each plaintiff bears the risk of loss for his leased truck, remains responsible for maintenance and repairs, and for the payment of the truck's insurance premium.

A-2898-16T4

The UTICA membership enrollment form permits a $10 monthly deduction from plaintiffs' compensation for UTICA membership dues. UTICA is a Texas corporation "formed to offer discounted products and services to eligible members." As described on the form, "UTICA simply provides access to certain discounted pricing for products and services negotiated with existing third party providers."

VMT owned the trucks plaintiffs operated and subleased from Lease Rite. Defendants' vehicle insurance policy covered plaintiffs. During plaintiffs' respective associations with VMT, the trucks were stored at VMT's Newark location when not in use by plaintiffs. VMT did not charge plaintiffs to store the trucks at VMT's facility. Plaintiffs were permitted to use the trucks to provide transportation services for other motor carriers when the trucks were not being used to provide services for VMT's customers. When plaintiffs' leased trucks were being repaired, VMT assigned plaintiffs a different truck for their use if one was available. VMT installed GPS tracking devices on the trucks leased by plaintiffs from Lease Rite. The GPS information allowed VMT to advise its customers when deliveries and pickups could be expected. Use of the

A-2898-16T4

GPS devices also allowed VMT to receive discounts on its motor vehicle and general liability insurance policies.[4]

Defendants paid some, but not all, of the tolls, fuel, repair and maintenance costs associated with plaintiffs' leased vehicles. Plaintiffs "swore under oath in their federal tax returns that they were independent contractors," and their returns showed that, as independent contractors, they paid expenses related to their trucking businesses, including the CRS program fee, Lease Rite lease payments, fuel and lubricant, tires, tolls, vehicle repairs, office expenses, freight fees and tracking fees.

Plaintiffs traveled to VMT's customers' locations in the leased trucks to pick up and deliver loads. VMT employees were required to report to the facility each morning, make the deliveries assigned by VMT and sequence the deliveries as directed by VMT.[5] Plaintiffs had the right to reject any assignments VMT

---

[4] In their opposition to defendants' counter statement of material facts, plaintiffs assert that VMT used the GPS tracking devices "to monitor their work." The assertion will not be considered because it is untethered to a citation to any competent evidence in the record as required by Rule 4:46-2(a).

[5] Plaintiffs assert they were also required to report to VMT's facility each day, and cite to Meltser's deposition testimony to support the claim. Meltser, however, testified that independent contractors, such as plaintiffs, were not required to report to VMT's facility each day and could come to the facility "[w]henever they want[ed]." Thus, there is no competent evidence supporting

offered and, during their associations with VMT, plaintiffs rejected assignments VMT had available. Defendants had the right to terminate plaintiffs' services at any time.

Defendants paid plaintiffs a per diem rate for their services. The per diem rate was paid regardless of the number of assignments plaintiffs performed in a day. Defendants paid plaintiffs the same amount for a day during which they completed multiple assignments as it did on a day they completed one assignment.

Defendants paid plaintiffs through CRS by advising CRS of plaintiffs' per diem rate and the number of days plaintiffs provided services during a pay period. CRS invoiced VMT for the amount due to plaintiffs and VMT remitted the amount due to CRS. CRS then issued checks made payable to plaintiffs and mailed the checks to VMT, which delivered the checks to plaintiffs. CRS deducted from plaintiffs' checks the sums due for lease payments under the sublease with Lease Rite, insurance, and the UTICA membership dues.[6]

---

plaintiffs' claim, and the record does not establish that it is undisputed that plaintiffs were required to report to VMT's facility each day.

[6] Plaintiffs contend deductions for insurance were for workers' compensation insurance. Defendants assert the amounts deducted were for occupational accident insurance. In addition, plaintiffs contend that VMT determined the

B.

Following oral argument on the motions, the court issued a written decision and separate orders granting defendants' summary judgment motion and dismissing the complaint, and denying plaintiffs' cross-motion. The court observed that it was required to apply the "ABC" test under N.J.S.A. 43:21-19(i)(6)(A)-(C), see Hargrove v. Sleepy's, LLC, 220 N.J. 289, 312 (2015), to determine if plaintiffs were employees under the WPL.

The court separately addressed each prong of the ABC test and concluded that the undisputed facts established as a matter of law that defendants failed to sustain their burden of establishing any of the prongs. The court determined plaintiffs were employees under the WPL because defendants failed to demonstrate that plaintiffs were not under their control in the performance of their work, that plaintiffs performed work outside of the usual course of defendants' business or performed work outside of defendants' places of business, and that plaintiffs had enterprises that existed independently of their relationship with defendants.

---

amounts CRS deducted from plaintiffs' compensation. Defendants assert the amounts were determined by CRS. These genuine disputes of fact cannot be resolved on summary judgment. See Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 536 (1995).

11

The court further concluded, however, that defendants did not violate the WPL by making deductions from plaintiffs' compensation. More particularly, the court found plaintiffs properly authorized the deductions for insurance, lease payments and UTICA dues under N.J.S.A. 34:11-4.4, which allows employers to withhold or divert portions of employee wages under certain defined circumstances.

The court therefore entered orders granting defendants summary judgment and denying plaintiffs' motion. Plaintiffs appealed from the court's orders.

## II.

We review orders granting or denying summary judgment by applying the same standard that the trial court applies in ruling on a summary judgment motion. Templo Fuente de Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016). The moving party is entitled to summary judgment if the record shows "there is no genuine issue as to any material fact challenged and . . . the moving party is entitled to a judgment or order as a matter of law." Ibid. (quoting R. 4:46-2(c)). When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the non-moving party. Brill, 142 N.J. at 523. Issues of law are subject to the

12

de novo standard of review, and the trial court's determination of such issues is accorded no deference.  <u>Kaye v. Rosefielde</u>, 223 N.J. 218, 229 (2015).

A.

Plaintiffs do not challenge on appeal the court's determination that they are employees under the WPL.  Instead, they appeal only from the court's findings that the deductions from their compensation are authorized by N.J.S.A. 34:11-4.4 and, therefore, defendants did not violate the WPL.  Thus, plaintiffs argue the court erred by denying their summary judgment motion and granting defendants' summary judgment motion.

Defendants do not appeal from the court's orders but nonetheless argue the court erred by finding plaintiffs were employees under the WPL.  We reject plaintiffs' assertion that defendants' failure to file an appeal bars consideration of defendants' argument that the court erred by finding plaintiffs were employees.  An appeal is from an action or judgment of a lower court, not from a court's reasoning,  <u>see</u> <u>Do-Wop Corp. v. City of Rahway</u>, 168 N.J. 191, 199 (2001) (explaining "appeals are taken from orders and judgments and not from . . . reasons given for the ultimate conclusion"), and a respondent on appeal may assert any arguments supported by the record in defense of the action or inaction below without filing a cross-appeal,  <u>see</u> <u>Kimball Int'l, Inc. v. Northfield Metal</u>

A-2898-16T4

Prods., 334 N.J. Super. 596, 604 n.1 (App. Div. 2000) ("[A] respondent may present alternative arguments for affirmance without filing a cross appeal."). Thus, we consider whether the court erred by finding plaintiffs were employees under the WPL.

Plaintiffs' status as employees under the WPL is governed by application of the ABC test set forth in N.J.S.A. 43:21-19(i)(6)(A)-(C). Hargrove, 220 N.J. at 312. Application of the ABC test requires a fact sensitive analysis to determine the "totality of the facts surrounding the parties' relationship." Phila. Newspapers, Inc. v. Bd. of Review, 397 N.J. Super. 309, 321 (App. Div. 2007).

"The 'ABC' test presumes an individual is an employee unless the employer can make certain showings regarding the individual employed. . . [.]" Hargrove, 220 N.J. at 305. N.J.S.A. 43:21-19(i)(6) sets forth the ABC test under the WPL,[7] ibid., and provides as follows:

> Services performed by an individual for remuneration shall be deemed to be employment . . . unless and until it is shown . . . that:
>
> (A) Such individual has been and will continue to be free from control or direction over the performance of

---

[7] The ABC test is included in the Unemployment Compensation Law, N.J.S.A. 43:21-1 to -24.30, but is utilized to determine an individual's employment status under the WPL and the New Jersey Wage and Hour Law, N.J.S.A. 34:11-56a to -56a38. Hargrove, 220 N.J. at 312.

A-2898-16T4

such service, both under his contract of service and in fact; and

(B) Such service is either outside the usual course of the business for which such service is performed, or that such service is performed outside of all the places of business of the enterprise for which such service is performed; and

(C) Such individual is customarily engaged in an independently established trade, occupation, profession or business.

[N.J.S.A. 43:21-19(i)(6).]

"[T]o be classified as an independent contractor, the retained individual must satisfy all criteria." Hargrove, 220 N.J. at 314. The test is founded on the presumption that plaintiffs are "employee[s] and imposes the burden to prove otherwise on" the putative employer. Ibid. Here, if defendants fail "to satisfy any one of the three criteria," plaintiffs shall be classified as employees. Carpet Remnant Warehouse, Inc. v. N.J. Dep't of Labor, 125 N.J. 567, 581 (1991).

Prong A of the ABC test is referred to as the "control test," Hargrove, 220 N.J. at 306, and requires that "the employer . . . show that it neither exercised control over the worker, nor had the ability to exercise control in terms of the completion of the work," id. at 305. "[T]he inquiry extends to all the circumstances attendant to the actual performance of the work." Id. at 314. "[I]t

is not necessary that the employer control every aspect of the worker's trade; rather, some level of control may be sufficient." Id. at 305.

Although defendants did not exercise complete control over the manner in which plaintiffs performed their work, the undisputed facts establish that defendants exercised some control over the circumstances attendant to the actual performance of the work primarily by exercising control over the trucks utilized for the performance of their services. For example, but not by way of limitation, defendants required plaintiffs to execute the fleet operator and service agreement with CRS as a condition of their retention and performance of their work. The agreement reserved to defendants the right to require that plaintiffs place on their leased trucks defendants' "lettering, advertisement, slogans, designs or logos" to identify the truck as defendants' during plaintiffs' performance of services on defendants' behalf. In other words, defendants retained plaintiffs to provide trucking services as purported independent contractors while maintaining the legal authority to require plaintiffs advertise and suggest, through the use of logos and other truck signage, that defendants were providing the trucking services directly. The fact that defendants did not "exercise[] control in fact" is irrelevant because they otherwise "reserved the right to control the [plaintiffs'] performance" of services rendered on defendants'

A-2898-16T4

behalf while operating the leased trucks. Carpet Remnant Warehouse, Inc., 125 N.J. at 582.

Defendants also exercised at least some control over plaintiffs by reserving the right to terminate plaintiffs' retention at any time for any reason and requiring that plaintiffs' subleases of the trucks from a third party, Lease Rite, automatically terminate if defendants ended plaintiffs' retention. Defendants further exercised control over circumstances attendant to the performance of their work by requiring plaintiffs to execute the documents in the CRS Independent Contractor Enrollment Packet, which mandated that plaintiffs pay for an insurance policy selected by CRS and for membership dues in an organization, UTICA, selected by CRS. Defendants also exercised control by directly incurring expenses in connection with plaintiffs' delivery of trucking services, including by fueling and repairing plaintiffs' trucks, and by assigning plaintiffs trucks owned by defendants when plaintiffs' trucks were being repaired. Cf. Trauma Nurses, Inc. v. Bd. of Review, 242 N.J. Super. 135, 144-46 (App. Div. 1990) (finding in part that nurses were not employees under the first prong of the ABC test because the employer did not offer the nurses any supplies or benefits).

A-2898-16T4

Whether or not plaintiffs were "instructed as to [their] working hours and the details of the route[s they were] to take . . . [does] not, in our opinion, under the circumstances, establish the fact that [plaintiffs were] not under control . . . within the meaning of" N.J.S.A. 43:21-19(i)(6)(A). Superior Life, Health & Accident Ins. Co. v. Bd. of Review, 127 N.J.L. 537, 540 (1942). The undisputed facts demonstrate defendants exercised at least some control over the circumstances attendant to the performance of plaintiffs' work. Thus, because the undisputed facts demonstrate defendants exercised some control over plaintiffs and the performance of their work under prong A of the ABC test, we are satisfied the motion court correctly determined plaintiffs were employees under the WPL. See Carpet Remnant Warehouse, Inc., 125 N.J. at 581.

The second prong of the ABC test "requires the employer to show that the services provided were 'either outside the usual course of the business . . . or that such service is performed outside of all the places of business of the enterprise.'" Hargrove, 220 N.J. at 305 (alteration in original) (quoting N.J.S.A. 43:21-19(i)(6)(B)). "[S]atisfaction of either of the B standard's alternatives is a prerequisite for avoiding designation as an employee." Carpet Remnant Warehouse, Inc., 125 N.J. at 584. Defendants have the burden of satisfying this prong of the ABC test, id. at 581, and do not dispute that they did not present

A-2898-16T4

evidence establishing plaintiffs provided services outside of defendants' usual course of business. In fact, the evidence establishes plaintiffs provided services—trucking services—identical to those defendants provide to their customers through the individuals they identify as their employees.

Defendants argue plaintiffs performed their services for defendants outside of all of the places of defendants' business enterprise. The inquiry under the second prong of the ABC test "identifies . . . the usual . . . places at which the employer performs its business." Hargrove, 220 N.J. at 314. Plaintiffs stored their trucks at defendants' location when the trucks were not being used, and when they accepted assignments from defendants, plaintiffs went to defendants' facility to obtain their trucks and traveled to defendants' customers' locations to pick up, transport and deliver loads. Based on the nature of defendants' operations, "the 'business of the enterprise' . . . was at no fixed place but the services were to be performed at any place within the prescribed area where [defendants' customers] were located." Superior Life, 127 N.J.L. at 540. Thus, the places of defendants' business enterprise not only included its facility, but also extended to the various locations the truck drivers—both those designated as employees and independent contractors—were required to travel to perform services on defendants' behalf.

The record before the motion court supports its determination that defendants failed to present evidence satisfying the second prong of the ABC test. The record affirmatively establishes that plaintiffs performed the same services that defendants provided in the usual course of their business and at locations at which defendants conducted their business. Defendants' failure to satisfy the second prong of the standard provides an independent basis for the court's determination plaintiffs are employees under the WPL.

We have also considered the court's finding that plaintiffs are employees because defendants failed to present sufficient evidence establishing the ABC test's third prong—that plaintiffs constitute "enterprise[s] that exist[] and can continue to exist independently of and apart from the particular service relationship." Hargrove, 220 N.J. at 306 (quoting Gilchrist v. Div. of Emp't Sec., 48 N.J. Super. 147, 158 (App. Div. 1957)). Prong C is satisfied "when an individual has a profession that will plainly persist despite the termination of the challenged relationship." Ibid. If the worker joins "the ranks of the unemployed" upon termination of the working relationship, prong C is not satisfied. Ibid. (quoting Schomp v. Fuller Brush Co., 124 N.J.L. 487, 491-92 (1940)).

A-2898-16T4

The motion court found plaintiffs "were able to become truck drivers because VMT provided them with a truck and covered related expenses of operating that truck" and that plaintiffs "have joined the ranks of the unemployed" upon termination because defendants reclaimed the truck and would not continue leasing it. The evidence does not support the court's finding.

The undisputed facts gleaned from the parties' submissions pursuant to Rule 4:46-2 do not permit a dispositive analysis of plaintiffs' status following the termination of their associations with defendants. For example, the record is devoid of any undisputed statements of material fact submitted in accordance with Rule 4:46-2 establishing plaintiffs joined the ranks of the unemployed following the termination of their associations with defendants. In addition, plaintiffs' tax returns permit a fact-finder to draw the reasonable inference that that plaintiffs operated truck transportation operations independent of their associations with VMT. In any event, in our view, there are fact issues concerning plaintiffs' status following the termination of their relationships with defendants that preclude an award of summary judgment on the issue of whether defendant satisfied its burden under the third prong of the ABC standard. The motion court erred by finding otherwise.

We are satisfied the motion court correctly determined plaintiffs were employees under the WPL. Defendants' failures to sustain their burden under the first and second prongs of the ABC test provide separate but equally dispositive reasons supporting the court's determination. See Carpet Remnant Warehouse, Inc., 125 N.J. at 581.

B.

Plaintiffs challenge the motion court's determination that the undisputed facts established defendants did not violate the WPL by requiring deductions from their wages for insurance, lease payments and UTICA membership dues. Plaintiffs argue the WPL authorizes only certain limited deductions from employee wages, and the insurance, lease payments and UTICA membership dues deductions are not within the limited deductions permitted under the WPL. Defendants argue that even if plaintiffs may be properly considered employees under the WPL, the undisputed facts establish that the deductions are authorized by the WPL as a matter of law.

The WPL "was designed to protect employees' wages and to guarantee receipt of the fruits of their labor. Generally, unless expressly provided by the [WPL], employers may not withhold or divert any portion of an employee's wages." Rosen v. Smith Barney, Inc., 393 N.J. Super. 578, 585 (App. Div.

2007), aff'd, 195 N.J. 423 (2008). "No employer may withhold or divert any portion of an employee's wages unless . . . required or empowered to do so by New Jersey or United States law" or such deduction falls within one of the eleven exemptions found in N.J.S.A. 34:11-4.4. Ibid. (quoting N.J.S.A. 34:11-4.4). In addition, it is unlawful to "withhold or to pay" an employee's wages "to any other person on the basis of any assignment or purchase" prohibited by the WPL. N.J.S.A. 34:11-4.14(a).

N.J.S.A. 34:11-4.4 provides that "[n]o employer may withhold or divert any portion of an employee's wages" unless the specific conditions defined in the statute are satisfied. In pertinent part here, the statute permits employers to withhold or divert portions of an employee's wages for:

> (1) Contributions authorized either in writing by employees, or under a collective bargaining agreement, to employee welfare, insurance, hospitalization, medical or surgical or both, pension, retirement, and profit-sharing plans, and to plans establishing individual retirement annuities on a group or individual basis, as defined by section 408(b) of the federal Internal Revenue Code of 1986 (26 U.S.C. § 408(b)), or individual retirement accounts at any State or federally chartered bank, savings bank, or savings and loan association, as defined by section 408(a) of the federal Internal Revenue Code of 1986 (26 U.S.C.§ 408(a)), for the employee, his spouse or both.
>
> . . . .

(4) Payments for company products purchased in accordance with a periodic payment schedule contained in the original purchase agreement . . . .

. . . .

(7) Labor organization dues and initiation fees, and such other labor organization charges permitted by law.

. . . .

(10) Payments authorized by employees for employer-sponsored programs for the purchase of insurance or annuities on a group or individual basis, if otherwise permitted by law.

[N.J.S.A. 34:11-4.4(b)(1), (4), (7) and (10).]

The motion court applied these statutory provisions to support its determination that defendants established as a matter of law that the challenged deductions from plaintiffs' wages were lawful.

As a condition of plaintiffs' employment, defendants required that plaintiffs execute the documents in the CRS Independent Contractor Enrollment Packet, which included an authorization for deductions from their wages for insurance the form characterizes as occupational accident insurance but also refers to as workers' compensation insurance. The motion court found the deduction was properly authorized under subsections (b)(1) and (b)(10) of N.J.S.A. 34:11-4.4 because those subsections permit employers to make

deductions for insurance that are authorized by employees. The court erred in doing so.

N.J.S.A. 34:11-4.4(b)(1) allows deductions from wages, when authorized in writing by an employee, for "employee . . . insurance . . . plans," but the record here is devoid of any evidence establishing that the insurance for which deductions were made from plaintiffs' wages was part of an employee insurance plan. Similarly, N.J.S.A. 34:11-4.4(b)(10) permits deductions "authorized by employees for employer-sponsored programs for the purchase of insurance," but the record is bereft of evidence establishing the insurance was part of an employer-sponsored program. Indeed, other than the deduction form's references to "occupational accident insurance" and workers' compensation insurance, there are no undisputed facts establishing the nature of the insurance, or whether it was part of an employee insurance plan, an employer-sponsored program or something else.

There is also a genuine issue of material fact concerning the type of insurance for which the deductions were authorized. Plaintiffs contend the insurance was workers' compensation insurance, and defendants assert otherwise, claiming the insurance was occupational accident insurance and not workers' compensation insurance. Resolution of the factual dispute is essential

25

to a determination as to whether either subsection (b)(1) or (b)(10) of N.J.S.A. 34:11-4.4 permits the insurance deductions because employers are required to provide workers' compensation for their employees. See N.J.S.A. 34:15-71. Defendants do not cite to any legal authority allowing an employer to shift its legal obligation to provide workers' compensation insurance to its employees through the guise of requiring the employees to pay the costs of the insurance, and we find nothing in the WPL authorizing a wage deduction for that purpose.

In sum, there is an insufficient base of undisputed material facts permitting a conclusion that the wage deductions for insurance were either lawful or unlawful under N.J.S.A. 34:11-4.4(b). We therefore vacate the court's orders granting defendants summary judgment on plaintiffs' claim that the deductions for insurance violated N.J.S.A. 34:11-4.4 and denying plaintiffs' summary judgment on their claim that the insurance deductions violated N.J.S.A. 34:11-4.4, and remand for further proceedings.

We agree with plaintiffs' argument that the motion court erred by concluding defendants were entitled to summary judgment on their claim that the deductions for UTICA membership dues are lawful under N.J.S.A. 34:11-4.4(b)(7). As noted, the statute authorizes wage deductions for "[l]abor organization dues and initiation fees, and such other labor organization charges

26                                                                      A-2898-16T4

permitted by law." N.J.S.A. 34:11-4.4(b)(7). The motion court, however, did not address whether UTICA is a labor organization within the meaning of N.J.S.A. 34:11-4.4(b)(7), or recognize that the undisputed facts establish it is not.

The WPL does not define the term "labor organization." We therefore give the words "their generally accepted meaning, according to the approved usage of the language," mindful that "words and phrases having a special or accepted meaning in the law, shall be construed in accordance with such . . . special and accepted meaning." N.J.S.A. 1:1-1; see also In re Plan for the Abolition of the Council on Affordable Hous., 214 N.J. 444, 467-68 (2013).

The term "labor organization" has a well-established meaning in the law. At its essence, the term refers to an organization that represents employees for collective negotiations or bargaining, and represents the collective interests of employees concerning the terms and conditions of their employment. See, e.g., Dzwonar v. McDevitt, 177 N.J. 451, 457 (2003) (identifying a labor union that served as the employees' collective bargaining representative as a labor organization); Lullo v. Int'l Ass'n of Fire Fighters, 55 N.J. 409, 413 (1970) (noting that "a labor organization in the usual sense" is an entity that is the "negotiating agent" for employees); Commc'ns Workers of Am., AFL-CIO v.

Christie, 413 N.J. Super. 229, 267-68 (App. Div. 2010) (equating a labor organization with a labor union that is the collective bargaining representative of employees); N.J.S.A. 10:5-5(c) (defining "labor organization" as "any organization which exists and is constituted for the purpose, in whole or in part, of collective bargaining, or of dealing with employers concerning grievances, terms or conditions of employment, or of other mutual aid or protection in connection with employment"). Defendants agree. In their brief, they rely on the Labor Management Relations Act of 1947, 29 U.S.C. § 141 to 187, to define "labor organization," asserting the term means:

> [A]ny organization of any kind, or any agency or employee representation committee or plan, in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work.
>
> [29 U.S.C. § 152(5).]

The undisputed facts establish UTICA is neither a labor union nor defendants' employees' collective bargaining representative, and it does not exist for the purpose of dealing with defendants' employees' grievances or the terms and conditions of their employment. To the contrary, the record establishes only that UTICA provides access to discounted products and services for its members who pay its dues. Defendants correctly argue that "getting a discount on goods

28

and services is a benefit to members of UTICA," but the record is barren of any evidence UTICA constitutes a labor organization. We therefore reverse the court's order finding defendants are entitled to summary judgment on their claim that the deductions of UTICA membership dues are lawful under the WPL, and reverse the court's order denying plaintiffs summary judgment on their claim that the UTICA membership dues deductions are unlawful under the WPL.

We are also convinced the court erred by finding that the truck lease payment deductions are lawful under subsection (b)(4) of N.J.S.A. 34:11-4.4. The statute permits employee-authorized deductions for "[p]ayments for company products purchased in accordance with a periodic payment schedule contained in the original purchase agreement." N.J.S.A. 34:11-4.4(b)(4). The court found that the lease deductions constituted payments for company products and are authorized by the WPL. We disagree.

N.J.S.A. 34:11-4.4(b)(4) does not authorize or permit the deduction for the truck lease payments. Even if we assumed, as defendants contend, that an employee leasing a vehicle from an employer constitutes the purchase of the employer's product,[8] the undisputed facts establish plaintiffs did not lease the

_____

[8] It is unnecessary that we consider or decide the merits of defendants' claim that, under the circumstances presented, a lease of a vehicle from an employer

A-2898-16T4

trucks from defendants. For whatever reason, VMT transferred its rights to lease the trucks to Lease Rite and, thus, as a matter of undisputed fact, any purported product plaintiffs allegedly purchased through their sublease was from Lease Rite and not defendants. See N.J.S.A. 34:11-4.4(b)(4). We reverse the court's orders granting defendants summary judgment on plaintiffs' claim the lease deductions violated the WPL and denying plaintiffs' motion for summary judgment on their claim the lease deductions were unlawful under the WPL.

In sum, we affirm the court's orders finding plaintiffs are employees under the WPL. We vacate the court's orders granting defendants summary judgment on their claim that the insurance deduction does not violate the WPL and denying plaintiffs' claim the insurance deduction violates the WPL and remand for further proceedings on that issue. We reverse the court's orders granting defendants summary judgment on their claims that the UTICA membership dues and lease payment deductions are lawful under the WPL and denying plaintiffs' motion for summary judgment on their claim that the UTICA membership dues deduction and lease payment deductions violate the WPL. We remand those

---

constitutes the purchase of the employer's "company products" under N.J.S.A. 34:11-4.4(b)(4).

 A-2898-16T4

claims for further proceedings on the issue of damages. On remand, the court shall also consider and decide plaintiffs' request for class certification.

Affirmed in part, reversed in part, vacated in part, and remanded for further proceedings. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2898-16T4